IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

SHYAM AGARWAL,

    Defendant.

CIVIL ACTION FILE

NUMBER 1:17-cr-043-TCB

# **O R D E R**

This case comes before the Court on Magistrate Judge Russell G. Vineyard's Final Report and Recommendation (the "R&R") [54] which recommends denying Defendant Shyam Agarwal's motions [15], [43] to suppress evidence. Agarwal has filed objections to the R&R [64].

Agarwal is charged in a one-count indictment with intent to distribute a Schedule I controlled substance, AB-PINACA, AB-CHMINACA, and XLR11 (collectively, "synthetic marijuana"), in violation of 21 U.S.C. §§ 841(a)(1) and(b)(1)(c). Agarwal seeks to suppress evidence collected and seized by the police following a traffic

stop on April 14, 2015. The facts of the case are largely undisputed and the Court adopts the facts as set forth in the R&R except as discussed herein. Agarwal objects to one factual issue in the R&R and the conclusions reached by the magistrate judge.

I. **Legal Standard on Review of a Magistrate Judge's R&R**

A district judge has a duty to conduct a "careful and complete" review of a magistrate judge's R&R. *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. Unit B 1982)). This review may take different forms, however, depending on whether there are objections to the R&R. The district judge must "make a de novo determination of those portions of the [R&R] to which objection is made." 28 U.S.C. § 636(b)(1)(C). In contrast, those portions of the R&R to which no objection is made need only be reviewed for "clear error." *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006) (per curiam) (quoting

*Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 315 (4th Cir. 2005)).[1]

"Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Nettles*, 677 F.2d at 410 n.8. "This rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act." *Id.* at 410.

After conducting a complete and careful review of the R&R, the district judge "may accept, reject, or modify" the magistrate judge's findings and recommendations. 28 U.S.C. § 636(b)(1)(C); *Williams*, 681 F.2d at 732. The district judge "may also receive further evidence or

---

[1] *Macort* dealt only with the standard of review to be applied to a magistrate's factual findings, but the Supreme Court has indicated that there is no reason for the district court to apply a different standard to a magistrate's legal conclusions. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Thus, district courts in this circuit have routinely reviewed both legal and factual conclusions for clear error. *See Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1373–74 (N.D. Ga. 2006) (collecting cases). This is to be contrasted with the standard of review on appeal, which distinguishes between the two. *See Monroe v. Thigpen*, 932 F.2d 1437, 1440 (11th Cir. 1991) (holding that when a magistrate's findings of fact are adopted by the district court without objection, they are reviewed on appeal under a "plain error standard" while questions of law always remain subject to de novo review).

recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C).

## II. Agarwal's Objections to the R&R

Agarwal objects to three of the conclusions reached by the magistrate judge in the R&R. Specifically, Agarwal objects to the conclusions that the scope and duration of the traffic stop were reasonable; that Agarwal's consent to search his vehicle was freely and voluntarily given; and that the collective knowledge doctrine provided Georgia state trooper Jeremy Lipham with independent probable cause to search Agarwal's vehicle. Further, he objects to the factual statements in the R&R indicating that trooper Lipham received updates from Drug Enforcement Agency ("DEA") agents monitoring the controlled buy sufficient to establish independent probable cause. As such, the Court will consider these questions de novo.

### A. The Scope and Duration of the Traffic Stop Were Reasonable

Agarwal objects to the magistrate judge's finding that the scope and duration of the stop were reasonable because he argues that Lipham was not acting diligently in his investigation of the traffic

4

offense. Agarwal was pulled over after Lipham observed one of his brake lights was not functioning. The stop lasted approximately twelve minutes from the beginning of the stop until Agarwal provided written consent for Lipham to search his vehicle.

During a legal stop, police officers may prolong the detention to investigate a driver's license and registration, conduct a criminal history check, and conduct further investigation if the police officer has an "articulable suspicion of other illegal activity." *United States v. Boyce*, 351 F.3d 1102, 1106 (11th Cir. 2003) (quoting *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001). Lipham had an objectively reasonable, articulable suspicion of illegal activity based on the brake light not functioning correctly, a violation of O.C.G.A. § 40-8-25(b), which requires that a vehicle's brake lights be operational.

Under *Terry v. Ohio*, 392 U.S. 1, 20 (1968), an officer's actions during a traffic stop must be "reasonably related in scope to the circumstances which justified the interference in the first place." "Furthermore, the duration of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop." *Purcell*, 236 F.3d

5

at 1277 (emphasis omitted). "The traffic stop may not last 'any longer than necessary to process the traffic violation' unless there is articulable suspicion of other illegal activity." *Id.* (quoting *United States v. Holloman*, 113 F.3d 192, 196 (11th Cir. 1997)).

"The touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991).

> The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.

*Florida v. Royer*, 460 U.S. 491, 500 (1983). The Eleventh Circuit has found that fourteen minutes was not an unreasonable amount of time for a traffic stop and that much longer detentions have been approved under the facts of each case. *Purcell*, 236 F.3d at 1279. Here, Lipham's investigation was reasonable in both scope and duration.

Of the roughly twelve-minute duration of the stop, four minutes were spent while Agarwal searched for his license, registration, and insurance. During that time, Lipham asked him several questions,

including why he was so nervous. After receiving the documents from Agarwal, Lipham asked Agarwal what was in the boxes in the back seat and he responded that he had pills in them. Agarwal went on to tell Lipham that the pills were sexual enhancement pills and that he was not a pharmacist. Lipham testified that in his experience, items marked as sexual enhancement pills were sometimes used to traffic controlled substances by removing the contents of the capsules and refilling them with a controlled substance. One of the boxes in the vehicle was open and Lipham could see that it contained pills.

At this point, less than seven minutes into the stop, Lipham had a reasonable, articulable suspicion of other illegal activity. *Purcell*, 236 F.3d at 1277. As a result, Lipham's continued questioning after the license check was justified by his reasonable suspicion. Further, the investigative method employed by Lipham consisted of asking for and receiving Agarwal's consent to search the car in order to resolve this suspicion in a short period of time. *Royer*, 460 U.S. at 500. Thus, the Court finds the scope and duration of the traffic stop reasonable and in accord with the constitutional requirements of the Fourth Amendment.

## B. Agarwal's Consent was Freely and Voluntarily Given

The Court agrees with the magistrate judge that Agarwal's consent for Lipham to search the vehicle was freely and voluntarily given.

"One of the well-established exceptions to the probable cause and warrant requirements is a search which is conducted pursuant to voluntary consent." *United States v. Garcia*, 890 F.2d 355, 360 (11th Cir. 1989). Voluntariness of consent is determined by looking at the "totality of the circumstances," including factors such as whether the consenting party was free to leave, the existence of coercive police procedures, the consenting party's awareness of a right to refuse consent, the consenting party's education and intelligence, and the consenting party's belief that no incriminating evidence would be found. *United States v. Ramirez-Chilel*, 289 F.3d 744, 752 (11th Cir. 2002) (quoting *United States v. Robinson*, 625 F.2d 1211, 1218 (5th Cir. 1980)).

Agarwal's argument depends on the conclusion that the traffic stop should have been concluded after roughly nine minutes and that

Lipham's interactions with Agarwal beyond that time were unreasonable in scope and duration. As the Court has found, *supra,* the entirety of the stop was reasonable in scope and duration, this argument also fails.

Agarwal also argues that because Lipham did not return his driver's license before requesting and receiving consent to search the vehicle, he could not leave the scene, rendering his consent involuntary. While the freedom to leave is one factor the court considers, here, that factor is greatly outweighed by the totality of the circumstances. Lipham was not coercive, threatening, or confrontational in tone, manner, or appearance during the interaction. Agarwal readily consented verbally and was also informed on the consent form of his right to refuse consent for the search. Under all the circumstances, Agarwal's consent was voluntary and freely given.

### C. The Collective Knowledge Doctrine Provided Independent Probable Cause

Even if Agarwal's other arguments had been successful, the collective knowledge doctrine would still have provided Lipham with independent probable cause to search the vehicle.

"Probable cause to arrest exists when the facts and circumstances within the collective knowledge of law enforcement officers, or of which they have reasonably trustworthy information, would cause a prudent person to believe that the suspect has committed or is committing an offense." *Craig v. Singletary*, 127 F.3d 1030, 1042 (11th Cir. 1997). The Court may consider the other officers' collective knowledge, in this case DEA agent Sherezad Dunn, "if they maintained at least a minimal level of communication during their investigation." *United States v. Willis*, 759 F.2d 1486, 1494 (11th Cir. 1985). "It is the government's burden to demonstrate that the officer had [probable cause] before initiating the stop." *United States v. Rodriguez-Alejandro*, 664 F. Supp. 2d 1320, 1335 (N.D. Ga. 2009).

Agarwal argues that the magistrate judge erred by stating that Lipham was in communication with the DEA agents by radio or cell phone because Lipham could not recall any communication with the DEA after the morning briefing on the day of the controlled buy. Lipham does not testify that he had no communication with the DEA that day, but only that he does not recall the communication he had.

His testimony does not conflict with other testimony that communications took place. Lipham testified that he attended the briefing that morning, does not recall the contents of the briefing, but knew he had been "told that [Agarwal] would have a large quantity of synthetic marijuana." [47] at 72:21–22.

However, Dunn testified at length about the communication with Lipham. Specifically, Dunn testified that Lipham was briefed on the fact that a source would meet Agarwal and confirm that he had the synthetic marijuana, and that Lipham would pull Agarwal's car over when it drove away to pick up the money for the deal. *Id.* at 17–18. Dunn testified that Lipham "had radio communication with [the DEA] the entire time" and was listening for the okay that Agarwal's vehicle was leaving. *Id.* at 17:23–24. Further, *after* the initial meeting with the confidential source and before the traffic stop, Lipham had to be told what vehicle Agarwal was driving that contained the synthetic marijuana because no one knew in advance what vehicle Agarwal would be driving. *Id.* at 17–18. Dunn testified that this communication

11

occurred and that she was personally on the channel on which the communication took place. *Id.* at 18.

In light of Dunn's testimony, and even in light of Lipham not recalling the communications, the Court finds that the Government has met its burden of proving more than a minimal level communications took place during the investigation.

### III. Conclusion

The Court has carefully reviewed the R&R and Agarwal's objections thereto. Having done so, the Court finds no clear error in the portions of the R&R not objected to. *Macort*, 208 F. App'x at 784. Further, the Court finds that Magistrate Judge Vineyard's factual and legal conclusions were correct and that Agarwal's objections have no merit. Therefore, the Court adopts as its Order the R&R [54]. Agarwal's motions [15], [43] to suppress are denied.

IT IS SO ORDERED this 11th day of May, 2018.

_____
Timothy C. Batten, Sr.
United States District Judge